Filed 11/27/24  P. v. Ramos CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GAVINO CIRILO RAMOS,<br><br>    Defendant and Appellant. | B332668<br><br>(Los Angeles County<br>Super. Ct. No. VA117053) |

APPEAL from a postjudgment order of the Superior Court of the County of Los Angeles, Andrew C. Kim, Judge.  Reversed and remanded with instructions.

Linda L. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Irvi and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

Defendant Gavino Ramos appeals from the trial court's denial of his petition to vacate his second degree murder conviction and resentence him under Penal Code section 1172.6.[1] According to defendant, the court's denial at the prima facie stage, without first holding an evidentiary hearing, violated section 1172.6.  We reverse the order denying the petition and remand for further proceedings.

# II.  FACTUAL BACKGROUND[2]

## A.  *Prosecution's Case*

"Defendant was an active member of a Lynwood gang.  On August 13, 2010, at about 6[:00] p.m., defendant went to a gang hangout on Blumont Road in South Gate.  The house was on the border of defendant's gang's territory.  At the time, [Isabel] Ballesteros operated a gambling machine there.  And a rival

---

[1]  Defendant filed his petition pursuant to former Penal Code section 1170.95 which the Legislature renumbered, with no change in text, as section 1172.6 effective June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  For clarity, we refer to that section as currently numbered throughout this opinion.  All further statutory references are to the Penal Code.

[2]  The facts are taken from *People v. Ramos* (Nov. 22, 2013, B244221) [nonpub. opn.] (*Ramos*), the opinion issued in the appeal from the underlying judgment, and provided solely to lend context to our discussion of the procedural history of this case that follows.

Compton gang member was selling methamphetamine from the location. Defendant was accompanied by a fellow gang member, [Andres] Verduzco. Several people were in the garage smoking methamphetamine when defendant and . . . Verduzco arrived. Among them were three or four members of the rival Compton gang. There was an ongoing, years-long feud between the Lynwood and Compton gangs. Defendant announced himself to the rival gang members. He then pulled a gun from his waistband or pocket and said, 'Everybody get the fuck out.' As people scattered, defendant fired his weapon. A rival gang member, Albert Reyes, was shot and died." (*Ramos, supra*, B244221.)

B. *Defendant's Testimony*

"Defendant testified he was unarmed and did not know there were rival gang members present until [an acquaintance at the house] told him. . . . Defendant testified: '[Reyes] was withdrawing a gun from his waist with his right hand. I grabbed his gun with my left hand and then I grabbed the barrel. We began to struggle. I told him, "Don't do it. Let it go."' Other people in the room began to yell and run for the door. Defendant described the continuing struggle with [Reyes]: '[A]s I stripped it, I like snatched it out of his hand. When I seen—he wasn't going to stop me, so I just snatched it out. In the process of snatching it out I jumped back. Jerked it. He went to turn towards the door. Everybody is already running. Everybody is bolting for the doors. [¶] So at that time as I jerked, I gripped the gun. As I gripped and pulled, that's when it discharged.' Defendant then fled through the same door he had used to originally enter the room.

Defendant took the gun with him when he fled." (*Ramos, supra*, B244221.)

## III.  PROCEDURAL BACKGROUND

A.  *Information*

In 2011, the Los Angeles County District Attorney filed an information that charged defendant and Verduzco[3] with the second degree murder of Reyes in violation of section 187, subdivision (a).  The District Attorney alleged, among other enhancements, that defendant personally and intentionally discharged a handgun causing great bodily injury and death within meaning of section 12022.53, subdivision (d).

B.  *Trial*

A trial, the trial court delivered the following jury instructions, among others:

CALJIC No. 8.10, which defined murder as a killing "done with malice aforethought[.]"

CALJIC No. 8.11, which provided that:  "The prosecution is proceeding on a theory of implied malice.  [¶]  Malice is implied when:  [¶]  1. The killing resulted from an intentional act;  [¶] 2. The natural consequences of the act are dangerous to human life; and  [¶]  3. The act was deliberately performed with

---

[3]    According to the opinion in *Ramos, supra*, B244221 "Defendant and . . . Verduzco were tried together before the same jury.  [Codefendant] Ballesteros was tried at the same time but before a separate jury."  (*Ibid.*)

4

knowledge of the danger to, and with conscious disregard for, human life.  [¶]  When it is shown that a killing resulted from the intentional doing of an act with implied malice, no other mental state need be shown to establish the mental state of malice aforethought."

CALJIC No. 3.02, which advised jurors that "[o]ne who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted."[4]

CALJIC No. 17.19.5, which instructed jurors that they "must determine whether defendant  . . . intentionally and personally discharged a firearm and caused death to a person in

---

[4]    CALJIC No. 3.02 further provided:  "In order to find the defendant guilty of the crime of murder under this theory as charged you must be satisfied beyond a reasonable doubt that:

"1.  The crime of attempted assault was committed[;]

"2.  That the defendant aided and abetted that crime;

"3.  That a co-principal in that crime committed the crime of murder; and

"4.  The crime of murder was a natural and probable consequence of the commission of the crime of attempted assault.

"In determining whether a consequence is 'natural and probable,' you must apply an objective test, based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur.  The issue is to be decided in light of all of the circumstances surrounding the incident.  A 'natural' consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened.  'Probable' means likely to happen."

the commission of that felony" and that "defendant himself must have intentionally discharged [a firearm]."

Following trial, the jury found defendant guilty of second degree murder and found true, among other allegations,[5] the personal use and discharge of a firearm causing great bodily injury or death allegation under section 12022.53, subdivision (d). The trial court found defendant had suffered five prior serious or violent felony convictions within the meaning of sections 667, subdivisions (b) through (i) and 1170.12, subdivisions (a) though (d) and sentenced him to an aggregate term of 80 years to life.[6]

C.    *Section 1172.6 Petition*

On April 27, 2022, defendant filed his section 1172.6 petition, alleging, among other things, that he had been charged in an accusatory pleading that allowed the prosecution to proceed under a theory of murder based on the natural and probable consequences doctrine and that he could not presently be convicted of murder because of changes made to sections 188 and 189, effective January 2019.

On May 24, 2023, defendant filed a "merit brief" arguing that the trial court instructed the jury with a natural and probable consequences jury instruction on a theory of murder that is no longer valid and the court should not rely on the facts

---

[5]    "The jury further found gang and personal firearm use allegations true.  (§§ 186.22, subd. (b)(1)(C), 12022.53, subd. (d).)" (*Ramos, supra*, B244221.)

[6]    On April 17, 2012, following remittitur from the Court of Appeal, the trial court resentenced defendant to 75 years to life.

in the opinion in *Ramos, supra,* B244221 or otherwise engage in factfinding at the prima facie stage of the proceedings.

On July 11, 2023, the District Attorney filed a response to the petition, arguing that the jury was not instructed on the theory of felony murder and although the jury had been instructed on the natural and probable consequences doctrine, "that theory only applied to [co]defendant Ballesteros and the [prosecution] did not argue natural and probable consequences to [defendant's] jury. [Defendant] was prosecuted as a principal who committed this crime with actual malice and he testified at trial he shot the victim, but it was an accident. Therefore, he cannot avail himself of the relief offered pursuant to . . . [s]ection 1172.6."

On July 17, 2023, the trial court held a hearing on defendant's petition. The court explained:

"It appears that the [defendant] was an active member of a Lynwood gang which feuded with a Compton gang.

"[Defendant] went to a gang hangout in the City of Southgate where a Compton gang member was selling drugs.

"[Defendant] was accompanied by a fellow member of his gang.

"[Defendant] confronted some three to four other Compton gang members.

"[Defendant] pulled out a gun; it was either a Smith and Wesson or a Glock semiautomatic handgun.

"He pulled it out of his waistband or pocket and said to the group, 'Everyone get the fuck out.'

"Apparently [defendant] was upset that people were selling narcotics at that location.

7

"[Defendant] fired the weapon at the victim, . . . Reyes, who later died; there were multiple witnesses to the incident.

"Following the shooting a witness—a female witness began screaming.

"[Defendant] told her, 'shut the fuck up, bitch, or I'll kill you.'

"It appears based, upon my reading of the transcript, the appellate court decision[']s findings that [defendant] is the actual shooter and actual killer.

"He was subsequently convicted of second degree murder with a personal use of a firearm.

"I also want to note that [defendant] testified at the trial, and he did testify that he snatched the weapon from the victim and supposedly discharged the weapon when he gripped the gun. And it was either a self-defense claim or an accident claim; either way, the jury rejected that argument.

"And so for all of those reasons the court makes the following ruling:  [¶]  [Defendant] has failed to make a prima facie case showing that he is entitled to sentencing relief pursuant to . . . section 1172.6.  [¶]  He is ineligible for relief for at least two reasons:  Number one, he is not a person convicted of felony murder or murder under the natural and probable consequences doctrine, or any other theory under which malice is imputed to a person based solely on that person's participation in the crime.  [¶]  Secondly, he could still be convicted of murder after the changes made to sections 188 and 189 effective January [1,] 2019.  [¶]  Under section 189 as it currently exists, one who murders is still liable for murder if they were the actual killer."

Defendant filed a timely appeal from the order denying his section 1172.6 petition.

# IV.   DISCUSSION

Defendant contends the trial court erred by failing to issue an order to show cause and denying his petition at the prima facie stage of the proceedings.  We agree.

## A.   *Legal Principles*

Under section 1172.6, "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition to have that conviction vacated under certain circumstances.  (§ 1172.6, subd. (a).)  "After the parties have had an opportunity to submit briefing[ ], the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief.  If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (§ 1172.6, subd. (c).)

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that . . . the petitioner was the actual killer . . . ."  (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)  In determining whether a petition makes a prima facie case for relief, the court may review the record of conviction.  (*People v. Lewis* (2021) 11 Cal.5th 952, 971–972 & fn.6 (*Lewis*).)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of

9

discretion.' [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis, supra*, 11 Cal.5th at p. 972.) "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*People v. Curiel* (2023) 15 Cal.5th 433, 463.) If the petitioner makes a prima facie showing of eligibility, the trial court must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*)

We review de novo the trial court's determination of whether the defendant has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

B.    *Analysis*

In ruling on the petition, the trial court concluded that defendant had failed to establish eligibility for resentencing under section 1172.6 because he failed to demonstrate that he could have been convicted under an invalid theory of murder. As the court read the record jury instructions, although the jury was instructed under the now invalid natural and probable consequences theory, that theory was limited to codefendants Verduzco and Ballesteros. When it delivered the instruction on natural and probable consequences, CALJIC No. 3.02, the court did not explain to the jurors that it did not apply to defendant or otherwise limit their use of it to the facts of the codefendants' participation in the shooting. Thus, at this stage of the

10

proceedings, we cannot reject, as a matter of law, defendant's allegation that he was convicted under an invalid theory of murder without a finding of malice.

Further, by concluding that defendant was convicted under a valid theory of murder that included a finding of implied malice, the trial court necessarily found that he acted with knowledge of the danger to, and conscious disregard for, human life. In reaching that conclusion, the court relied on both the appellate opinion affirming the judgment of conviction and the transcript of the trial testimony, finding, among other things, that defendant arrived at the house armed with a handgun, brandished it in the garage while shouting at those present, and "fired the weapon at the victim, . . . Reyes, who later died; there were multiple witnesses to the incident." At the prima facie stage, however, the trial court's inquiry is limited to the readily ascertainable facts from the record and cannot involve factfinding, that is, weighing evidence, drawing inferences, or making credibility determinations. (See *People v. Drayton* (2020) 47 Cal.App.5th 965, 968, 982.)

Finally, the jury's finding that defendant personally used a firearm also did not establish defendant's ineligibility for relief as a matter of law. (*People v. Offley* (2020) 48 Cal.App.5th 588, 598.)

Because the record of conviction does not conclusively establish that defendant is ineligible for relief as a matter of law, the trial court erred in denying defendant's petition at the prima facie stage.

11

# V.    DISPOSITION

The order denying the section 1172.6 petition for resentencing is reversed and remanded to the trial court with directions to issue an order to show cause and to thereafter proceed as required by section 1172.6, subdivision (d).

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

D. KIM, J.

We concur:

MOOR, P. J.

DAVIS, J.*

---

*    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12